UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HERB GERAGHTY,<br>               Defendant. | Crim. A. No. 22-096-10 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(September 22, 2023)

On August 29, 2023, a jury of impartial Washingtonians found Defendant guilty of, among other things, forcibly obstructing access to abortion services at a reproductive health clinic in the District of Columbia, in violation of 18 U.S.C. §§ 248(a)(1), (b)(1). Because that offense is a "crime of violence" within the meaning of the Bail Reform Act and the Government indicated that it would seek a term of incarceration at sentencing, the Court was forced to order Defendant detained pending sentencing. *United States v. Handy*, Crim. A. No. 22-096 (CKK), 2023 WL 5651844, at *1 (D.D.C. Aug. 31, 2023). Defendant now moves the Court to release him from presentencing detention for twenty-four hours in order to attend his sister's wedding. Although there are compelling, but not exceptional, circumstances to permit Defendant's release, the Court remains bound by statute to continue his pretrial detention. Regretfully, the Court **DENIES** Defendant's [423] Motion for Furlough.

**I.     BACKGROUND**

According to the allegations in the operative indictment and the Government's trial evidence, all ten Defendants in this case[1] successfully schemed to disrupt access to a reproductive

---

[1] Defendants are: Lauren Handy, Jonathan Darnel, Jay Smith, Paula "Paulette" Harlow, John Hinshaw, Heather Idoni, William Goodman, Joan Bell, and Herb Geraghty. Defendant Harlow has yet to proceed to trial and is presumed innocent until proven guilty beyond a reasonable

1

health clinic in the District of Columbia on October 22, 2020.  ECF No. 113 at 5.  Defendant Handy orchestrated this conspiracy, directing her co-Defendants to undertake various preparations to blockade the clinic.  *Id.*  For example, Defendants Smith, Marshall, Hinshaw, and Bell used chain and rope to block the clinic's doors.  *Id.* at 6.  For her part, Defendant Handy made an appointment at the clinic under a false name in order to ensure her and her co-conspirators' entry.  *See id.* at 4.

Trial evidence demonstrated that Defendant Geraghty assisted Defendant Handy in planning the blockade, in addition to joining his co-conspirators in the forceful entry into the clinic.  Defendant Geraghty can be seen on video joining a clump of activists as it pressed against three clinic staff attempting to keep Defendants from entering the clinic.  Additionally, security-camera footage depicts one clinic employee forcefully shoving Defendant out of the clinic with a broom.  Importantly, trial evidence demonstrated that this use of force, employed to enter the clinic, caused a nurse to stumble backwards in the melee, severely spraining her ankle.  The jury then concluded, based on this video evidence in concert with documentary evidence and witness testimony, that Defendant did, in fact, use force and/or violence against clinic employees in his entry, or at least aided and abetted fellow Defendants in doing so.  The jury evidently discounted Defendant's trial testimony that he did not use force, did not intend to assist others in using force, and is, as a moral principle, opposed to the use of force.

There is little doubt that, as to Mr. Geraghty in particular, this finding is aberrational.  The Government's trial evidence established that, unlike other Defendants, this blockade was the first instance that Defendant violated federal law to achieve certain political or moral ends.  Moreover, Mr. Geraghty was, until his conviction, the executive director of an organization "dedicated to

---

doubt.  The remaining defendants have either been found guilty or have pled guilty.

creating a culture of peace and life, and in so doing, . . . to bring an end to all aggressive violence against humans through education, discourse, and action." Rehumanize International, "About Us," *available at* https://www.rehumanizeintl.org/ (last accessed Sept. 21, 2023 11:54 AM).  In view of Defendant's otherwise law-abiding life prior to the charged conduct, Defendant was released on very few conditions prior to trial.  Although these prior good acts were not admissible at trial, they paint a convincing picture of an individual otherwise committed to pacifism, not violence. The Court is also sympathetic to the basis for Defendant's instant request:  Defendant wants to travel to Philadelphia with his fiancée so that he may participate in his sister's wedding as her best man.  Yet, because it is solely for the jury to determine guilt or innocence, the Court had no choice but to detain Defendant pending sentencing.  And guilt here mandates detention.

## II. DISCUSSION

In light of the jury's finding of force, the Bail Reform Act extends the Court no discretion to release Defendant even for twenty-four hours, these sympathetic circumstances notwithstanding.  As the Court explained at more length in its prior memorandum opinion on detention pending sentencing, the question is governed predominantly by 18 U.S.C. § 3143(a)(2). *Handy*, 2023 WL 5651844, at *1.  Pursuant to that statutory section, the Court "*shall* order that a person who has been found guilty of [among other things, a crime of violence, and is] awaiting imposition or execution [of a sentence] be detained" in two circumstances.  *Id.*  If (1) the Court does not find that "there is a substantial likelihood that a motion for acquittal or new trial will be granted" and (2) the Government will "recommend[] that [a] sentence of imprisonment be imposed," then the Court *must* order the defendant detained.  18 U.S.C. § 3143(a)(2)(A)(i)-(ii). The Court must do so even if it can find by clear and convincing evidence that Defendant is neither a flight risk nor a danger to the community.  *Id.* (2)(B).  Because, in the Court's view, forcefully

and/or violently obstructing clinic access in violation of 18 U.S.C. §§ 248(a)(1), (b)(1) is a "crime of violence" within the meaning of the Bail Reform Act, federal law mandated that the Court order Defendant detained. *Handy*, 2023 WL 5651844, at *2.

Because 18 U.S.C. 3143 provides no authority to permit temporary release where presentencing detention is required, Defendant relies on another statutory section to support a brief furlough, 18 U.S.C. § 3145(c). Pursuant to that statutory section, the Court may order release a defendant subject to mandatory detention where (1) the Court finds by clear and convincing evidence that the defendant is not a flight risk or danger to the community, and (2) "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."[2] *See id.* This "escape hatch" is quite narrow and only rarely successfully invoked. *See United States v. Wiggins*, 613 F. Supp. 3d 348, 356 (D.D.C. 2020). "Exceptional reasons" are necessarily those that are "clearly out of the ordinary, uncommon, or rare." *United States v. Sharp*, 517 F. Supp. 2d 462, 464 (D.D.C. 2007). In this jurisdiction, section 3145(c) has almost only applied to release due to the COVID-19 pandemic. *See, e.g.*, *United States v. Harris*, 451 F. Supp. 3d 64, 69 (D.D.C. 2020); *United States v. Johnson*, 464 F. Supp. 3d 22, 37 (D.D.C. 2020) (Brown Jackson, J.). *Cf. also Banks v. Booth*, 459 F. Supp. 3d 143, 159 (D.D.C. 2020) (CKK) (granting temporary restraining order to correct deficient COVID-19 procedures at D.C. jail).

Yet, as a matter of law, a wedding is different in kind. There appears to be broad agreement among the district courts that events such as wedding and funerals for close friends or family members do not present particularly uncommon, compelling circumstances necessitating

---

[2] There is a split in authority as to whether section 3145(c) may be applied in the presentencing context by a district judge, or whether the statute exclusively applies to a court of appeals. *See United States v. Harris*, 451 F. Supp. 3d 64, 69 (D.D.C. 2020). For its part, this Court has held *sub silentio* that a district court may apply this provision, and again assumes as much *arguendo*. *See United States v. Sharp*, 517 F. Supp. 2d 462, 464 (D.D.C. 2007).

4

temporary release. *See, e.g.*, *United States v. Debolt*, Crim. A. No. 5:09-24, 2010 WL 11698242, at *2 (N.D. W. Va. 2010) (wedding); *United States v. Schimley*, Crim. A. No. 08-510, 2010 WL 1796337, at *2 (N.D. Ohio May 3, 2010) (wedding); *United States v. Kenney*, Crim. A. No. 07-66, 2009 WL 5217031, at *2 (D. Me. Dec. 30, 2009) (funeral).  More generally, "purely personal" circumstances are very rarely exceptional, because "incarceration regrettably inflicts family hardship on many, if not most, defendants." *United States v. Smith*, 34 F. Supp. 3d 541, 554 (W.D. Pa. 2014) (internal quotation marks omitted).  Similarly, prior compliance with conditions of release and "conformance to society's expectations," e.g., law-abidingness and nonviolence, "are not exceptional—these behaviors are expected of all defendants." *Id.* at 555.

Particularly in light of Defendant's prior background, detention pending sentencing is undoubtedly harsh.  No court should impose any duration of incarceration lightly.  Yet the Court must "follow Congress's mandate" to detain Defendant pending sentencing even though it "regrettably results in separation him from his family and work." *See United States v. Lippold*, 175 F. Supp. 2d 537, 541 (S.D.N.Y. 2001).  Such are the consequences of a felony conviction at trial.  A jury having found that Defendant used force and assisted fellow defendants in using locks and chains to obstruct clinic employees and patients, federal law provides that Defendant must now bear the consequences of his actions.

Accordingly, it is hereby

**ORDERED**, that Defendant's [423] Motion for Furlough is **DENIED**.

**SO ORDERED**.

Dated: September 22, 2023

                                                                                        /s/_____
                                                                                     COLLEEN KOLLAR-KOTELLY
                                                                                     United States District Judge