IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF THE DISTRICT OF COLUMBIA

_____

UNITED STATES,  )
  )
  )
    v.  )   Crim. No.22cr96
  )   Hon. Colleen Kollar-Kotelly
HERB GERAGHTY,  )
    Defendant.  )
_____ )

## DEFENDANT'S POSITION ON SENTENCING

Comes now Defendant Herb Geraghty and states as to the Presentence Report ("PSR") as follows:[1]

Mr. Geraghty's entire adult life has been dedicated to the defense of the vulnerable and the prevention of violence (PSR Paras. 141-44). The conduct for which he stands convicted is nothing but consistent with his longstanding principles.

Mr. Geraghty objects to the PSR as follows:

1. Para. 40 – Mr. Geraghty did not "push and shove against medical specialist Ms. Proctor." The video evidence reveals Mr. Geraghty standing in the press of people waiting to enter – and being pushed from behind into the clinic once the door was opened by someone else.

2. Para. 43 – the video evidence reveals that no one forced Ms. Holler to the ground or prevented (especially by pushing) her from getting back up.

3. Para. 47 – the video evidence reveals that Mr. Geraghty was not in the clinic when the police ordered the rescue participants to leave – this should be made clear.

---

[1] Undersigned acknowledges and thanks counsel for co-defendant Handy, specifically Blerina Jasari and the rest of the excellent Thomas More Society team, for portions of this pleading lifted verbatim from a draft pleading kindly shared by Steve Crampton.

4.  Para. 60 – co-defendant Harlow did not knock Ms. Smith into a chair.  The video evidence shows Ms. Smith reacting with such violence that she lost her balance and fell into the chair.

5.  Para. 66 – the author uses the conjunctive in claiming that Defendant Geraghty assisted by recruiting participants and crafting a press release.  There is no evidence as to the former.  Further, a review of the video evidence reveals that Defendant took no affirmative measure to assist anyone in setting up a "blockade."

6.  Paras. 70, 82, 88 – the PSR assigns a two-level enhancement for obstruction of justice (false testimony).  Mr. Geraghty testified truthfully that he is opposed to abortion, and that he participated in the rescue because he believed partial birth abortions were being performed at the clinic.  He further testified that he had no intention physically to "block" anyone.  This testimony was uncontroverted.  No part of the video shows Mr. Geraghty blocking or assisting to block anyone and no part of the verdict inexorably contradicts any of his statements.

   Testimony is not automatically deemed untruthful by virtue of a guilty verdict.  Testimony may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent.  A defendant's testimony

> "may be truthful, but the jury may nonetheless find the testimony insufficient to excuse criminal liability or prove lack of intent. … [I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition [the Supreme Court has] set out.

*United States v. Dunnigan*, 507 U.S. 87, 95 (1993).

Further, "'willfully' requires that the defendant consciously act with the purpose of obstructing justice." *United States v. Thompson*, 962 F. 2d 1069, 1071 (D.C. Cir. 1992)(quoting *United States v. Lofton*, 905 F.2d 1315, 1317 (9th Cir.1990)).

And finally, when considering an obstruction enhancement, "[a] defendant's testimony and statements should be evaluated in a light most favorable to the defendant." *Id.* (quoting Application Note 1 for Guideline Sec. 3C1.1). The Second Circuit put it another way, finding that the Application Note in question "instructs the sentencing judge to resolve in favor of the defendant those conflicts about which the judge, after weighing the evidence, has no firm conviction." *United States v. Onumonu*, 999 F. 2d 43, 45 (2nd Cir. 1993).

Nothing in Mr. Geraghty's uncontroverted testimony, especially when taken in the light most favorable to him, establishes that he willfully committed perjury to obstruct justice.

This enhancement should not be applied.

7.  Para. 75 – the conduct of Count 2 is comprised within the conspiracy subject of Count

    1.  USSG Sec. 3D1.2 requires grouping:

    "(a) When counts involve the same victim and the same act or transaction.

    (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan…

    The putative victims of the substantive count are fully comprised within those of the conspiracy count and the operative act charged in Count 1 was the object of the charged conspiracy – i.e., the counts involve a common putative victim and a common putative act, that being the action allegedly taken in the abortion clinic subject of Count

2.  Further, in their aggregate, both counts comprise two acts – agreement and action –

toward a common objective.

> The two counts should be grouped.

**8.**   Para. 79 – the video evidence reveals no physical restraint of Ms. Holler.  Without

conceding any denial of access by Mr. Geraghty, such conduct would not equate to or

necessarily comprise physical restraint.  Denial of entry, without more, does not connote

"forc[ing]" Ms. Holler to "[lie] on the floor."

> "Physically restrained" means "the forcible restraint of the victim such as by
> being tied, bound, or locked up." U.S.S.G. § 3A1.3, Application Note 1; U.S.S.G.
> § 1B1.1, Application Note 1(L).  Absent a finding that Mr. Geraghty tied, bound, locked
> up, or physically confined or threatened an individual with injury such that she had no
> alternative but to comply, he cannot be said physically to have restrained anyone and the
> physical restraint enhancement should not apply.  *See, e.g., United States v. Drew*, 200
> F.3d 871, 880 (DC Cir. 2000) (victim was not subject to physical restraint when
> defendant ordered victim to leave bedroom and walk down the stairs at gunpoint);
> *United States v. Anglin*, 169 F.3d 154, 163 (2dd Cir. 1999) (bank tellers were not
> physically restrained during robbery where defendant brandished a gun, defendant told
> tellers to get down on the floor and not move, and they did so); *United States v. Bell*,
> 947 F.3d 49, 60 (3rd Cir. 2020) (defendant did not physically restrain victim by
> grabbing employee's neck, pointing what appeared to be gun at employee's neck, and
> throwing employee to the ground, and when employee grabbed defendant's arm in
> attempt to prevent him from opening cash register, by striking employee with the alleged
> gun and revealing that it was plastic, as breaking upon impact).

Mr. Geraghty's conduct fits none of the parameters required for application of this enhancement.

9. Paras. 80, 86 – Given that the statute of conviction arguably comprises denial of access by other than physical means (and without conceding such), Ms. Holler's and Ms. Jones' pregnancies do not equate to vulnerability for purposes of the statutes subject of Mr. Geraghty's conviction.

Further, a "vulnerable victim" is someone "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1, Application Note 2.  The victim related adjustment should not be applied because a victim is not unusually vulnerable by virtue of their pregnancy alone. *See, e.g., United States v. James*, 139 F.3d 709, 714 (9th Cir. 1998) ("The district court did not classify the [victim] as unusually vulnerable simply because she was pregnant.").

Rather, the enhancement is only available in cases where the victim is uniquely vulnerable as compared to the typical victim of the offense. *See, e.g., United States v. Caballero*, 277 F.3d 1235, 1251 (10th Cir. 2002) ("the evidence must ... distinguish the victim as atypical of the usual targets of the relevant criminal conduct"); *United States v. Feldman*, 83 F.3d 9, 15 (1st Cir. 1996) ("[I]n order to warrant a finding of unusual vulnerability, there must be some evidence, above and beyond mere membership in a large class, that the victim possessed a special weakness that the defendant exploited.").

The "typical victim" of a FACE violation is pregnant.  Consequently, application of the enhancement for vulnerable victim for the simple fact of a putative victim's pregnancy would exceed the statute's intended punitive effect.  FACE was enacted

specifically to support pregnant women no less than the civil rights laws were enacted to support racial minorities.  A sister court in Mississippi has rejected the application of the vulnerable victim enhancement based on a victim's race to a conspiracy to violate civil rights (as protected under 18 U.S.C. Sec. 245(b)(2)(A)).

> "[B]ecause a fundamental element of [the statute] is that the defendant acted, at least in part, because of the race… of the victim, application of the enhancement in this instance would be duplicative and, in effect, would penalize the defendant twice for the same conduct.

*United States v. Harris*, 128 F. Supp. 3rd 957, 962 (N.D. Miss. 2015).

While FACE does not expressly proscribe interference with pregnant women, its practical effect is no less protective of that class than are the civil rights laws of racial minorities.  Duplicative punishment is noxious in the context of either.

10. Para. 127 – Mr. Geraghty has never been prescribed Xanax.

11. Paras. 187-89 – the PSR states simultaneously that the author sees no circumstance not adequately considered in the Guidelines, but that a variance is warranted "based on the following factor," while following with no such factor – and finally opines that an upward or downward variance may be appropriate.  The second (impossible to assess in any event as the PSR never identifies the subject "following factor") and third averments contradict the first.

12. Para. 190 – the sentences of the five comparison defendants are meaningless for purposes of consideration in this case without the context of their convictions.  Count 1 was enacted to punish Klansmen – a far cry from Mr. Geraghty's non-violent conduct as revealed in the evidence.   The unnamed comparison sentences on offer in the PSR

serve no purpose unless those defendants were sentenced for conduct similar to Mr. Geraghty's.

Such would appear to be unlikely since undersigned has been unable to find a decision

comprising punishment under both of the criminal statutes at bar.

## CONCLUSION

*Booker* has vested sentencing courts with nearly plenary discretion.  *United States v.*

*Booker*, 543 U.S. 220, 258-60 (2005).  A non Guideline sentence is allowed not only when the

Guidelines fail properly to reflect the sentencing considerations delineated in Sec. 3553(a), but

also when the Guidelines reflect "unsound judgment" or even when "the case warrants a

different sentence regardless." *Rita v. United States,* 551 US 338, 351, 357 (2007).  In fact, "the

Guidelines are not only not mandatory on sentencing courts, they are not to be presumed

reasonable." *Nelson v. United States*, 555 U.S. 350, ___ (2009); *see also, Rita, 551 U.S.* at 350.

The Supreme Court no longer even requires specific mitigating factors to justify a

divergence below the Guidelines – the district court's subjective disagreement with the

Guidelines suffices.

> "[E]ven when a particular defendant… presents
> no special mitigating circumstances – no outstanding
> service to country or community, no unusually
> disadvantaged childhood, no overstated criminal history
> score, no post-offense rehabilitation – a sentencing
> court may nonetheless vary downward from the advisory
> guideline range… The only fact necessary to justify such a
> variance is the sentencing court's disagreement with the
> guidelines…

*Spears v. United States*, 555 U.S. 261, 263-64 (2009) (*per curiam)* (internal quotations and
citations omitted).

Fundamentally, the grounds for a divergence are now bounded only by

reasonableness.

> "Although the sentencing judge is obliged to consider

> all of the sentencing factors outlined in Sec. 3553(a),
> the judge is not prohibited from including in that
> consideration the judge's own sense of what is a fair
> and just sentence under all the circumstances.  That is
> the historic role of sentencing judges, and it may continue
> to be exercised subject to the reviewing court's ultimate
> authority to reject any sentence that exceeds the bounds
> of reasonableness.

*United States v Jones*, 460 F. 3d 191 (2nd Cir. 2006).

A sister court in New York is succinct.

> "[T]he Guidelines are no longer a straightjacket
> binding courts to artificially created and cruel
> paradoxes of sentencing.

*United States v. Hawkins*, 380 F. Supp. 2d 143, 161 (E.D.N.Y. 2005).

Nonetheless, Mr. Geraghty has already served a sentence in conformity with the Guidelines as properly calculated.  Shorn of the unwarranted enhancements and grouping of counts urged in the PSR, Mr. Geraghty's calculation correctly yields an Offense Level of 12, Criminal History Category I – 10 to 16 months.  As of his sentencing date, Mr. Geraghty (with good time credit) will already have served a 10 month sentence.

Sec. 3553 requires the Court to impose a sentence "sufficient, but not greater than necessary… "  Mr. Geraghty's innocuous conduct on the day in question combined with his very creditable long-standing commitment to non-violence and advocacy for the vulnerable, impel a downward departure/variance from the Guideline for an offense created to punish Klansmen.  Unfortunately, the time to have passed during Mr. Geraghty's post-trial confinement precludes at this point, the application of any meaningful downward departure or variance.

There simply is no way reasonably to attribute from the video (or any other) evidence, any violent intent or conduct by Mr. Geraghty.  Rather, he acted non-violently from his genuine conviction that the unborn deserve protection and that the clinic at bar was performing illegal

(i.e., partial birth) abortions.  Such was only of a piece with his consistent history of advocating

for the protection of the vulnerable and against violence in all its forms.

Confinement in any measure is unjust for Defendant Geraghty.  Further confinement

would be an abomination.[2]

Respectfully Submitted,

HERB GERAGHTY
By Counsel

_____/s/_____
John C. Kiyonaga

120 N. St. Asaph Street
Alexandria, Virginia 22314
Telephone: (703) 739-0009
Facsimile: (703) 340-1642
E-mail: john@johnckiyonaga.com

Counsel for the Defendant

Certificate of Electronic Service

I hereby certify that on April 15, 2024, I electronically filed the foregoing with the Clerk
of Court using the CM/ECF System, with consequent service on all parties.

_____/s/__ _____
John C. Kiyonaga

---

[2] Undersigned notes his change of address to that reflected above.

9