IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF THE DISTRICT OF COLUMBIA

```
_____
                              )
UNITED STATES,                )
                              )
        v.                    )      Crim. No. 22cr96
                              )      Hon. Colleen Kollar-Kotelly
HERB GERAGHTY,                )
        Defendant.            )
                              )
_____)
```

## MOTION TO RECONSIDER
## MOTION TO DISMISS UNDER FED. R. CRIM. P. 29

Comes now Defendant Herb Geraghty, by counsel, and respectfully requests the Court reconsider his earlier Motion to Dismiss pursuant to Fed. R. Crim. P. 29 (Doc 452) and states in support as follows.

Throughout the trial of this matter, the Court has consistently demonstrated bias in favor of the Government. This bias, communicated to jurors, operated to relieve the Government of its burden to carry its case.

### A. **Jury Selection**

Prior to trial, Defendant moved (Doc 285) for individual, counsel conducted *voir dire.* The motion cited the need for probing questions by counsel in order to afford a fair opportunity to select a cognizably impartial jury from a jurisdiction that overwhelmingly favors unrestricted abortion access. The Court orally granted the motion, but proceeded with the questioning of the first venireman called, to impede and, finally, to preclude meaningful inquiry by undersigned.

MR. KIYONAGA: Good morning. You have indicated that your father was a lawyer. You worked in probably a fairly busy courthouse for a couple years. So I would assume that you are no stranger to controversies and their resolution.

THE COURT: About what? I mean, in terms of controversies, I mean, in her work or something else? That's very broadly set out.

MR. KIYONAGA: It was only an opener, Your Honor.

THE COURT: No. If you are going to ask a question that's quite broad, then I think you need to be a little more specific about controversies, et cetera. She didn't work for the courthouse. She worked for GSA. And facilities is something GSA -- they run the buildings. They make sure the lights work, that various other things occur in the buildings.

MR. KIYONAGA: Very well. I will get to my question without further ado.

THE COURT: All right.

MR. KIYONAGA: Do you have the practice or inclination to disapprove of people with whom you disagree?

A PROSPECTIVE JUROR: I try and be an open-minded person in general. I don't know what the context is of your question.  Do I disapprove of people I disagree with? Was that it?

MR. KIYONAGA: Yes. In other words, we all hold opinions, and they cover a vast range from banal to very, very consequential. How you dress to go to the office, that's pretty banal. Do you drink wine with lunch or wait till dinner, pretty banal. Are you faithful to wedding vows, far more consequential. How you vote, far more consequential. Questions of life and death is the most serious extreme of that spectrum. So I would surmise the tendency is to attach judgment to an opinion the more consequential the opinion is. So on the issue, say, of abortion, would you -- I am not asking you your opinion on the matter of abortion, but would you be inclined to disapprove of somebody who did not hold your opinion of that particular procedure or that particular issue?

A PROSPECTIVE JUROR: No. I mean, if selected for the jury, I would be open minded, as I was instructed to do so by the judge.

MR. KIYONAGA: But just in your day-to-day existence, in your interactions with other people, if you run into someone socially or professionally and it develops, you become aware of the fact that you and this other person have a core disagreement on a matter that you happen to hold fairly closely, would you consider that person either morally or intellectually incorrect, wrong, inferior, or would you --

THE COURT: That's too broad a question, sir, in terms of what this case is about. What we would want you to do is to not prejudge this case or prejudge what the testimony is going to be but to keep an open mind, not employ or impose your personal views, political, religious, or whatever else, in terms of can you do that and make a decision based on what's presented in the courtroom, not imposing your own views, and keeping an open mind?

A PROSPECTIVE JUROR: Yes, Judge.

MR. KIYONAGA: I would ask Your Honor --

**THE COURT: She's answered your question, sir.**

**MR. KIYONAGA: Your Honor --**

**THE COURT: She has answered your question, sir.**

**MR. KIYONAGA: Your Honor, it was your question, not mine.**

**THE COURT: She's answered the question.**

**MR. KIYONAGA: Your Honor, we were told --**

**THE COURT: Sir --**

**MR. KIYONAGA: You fed her that answer, ma'am.**

Tr., Aug. 9, 2023, AM Session, pp 67-70 (emphasis added).

The Court refused to allow undersigned meaningfully to probe the venire's impartiality as to an accused to be demonstrated as actively engaged in seeking to end abortion - in diametric opposition to the belief held by the overwhelming majority of

the venire – notwithstanding abortion was the issue fundamentally impelling the

charges.

      MR. KIYONAGA: Sir, you disapproved of the Dobbs decision, correct?

      A PROSPECTIVE JUROR: Yes.

      MR. KIYONAGA: Fair to say that you would disapprove of people, individual private citizens, who seek to end abortion, correct?

      A PROSPECTIVE JUROR: Yes.

      MR. KIYONAGA: That disapproval would color the way you see the evidence in this case, correct?

      THE COURT: **It's not about abortion. It's about access to reproductive care which happens to include abortion.** You just asked him about whether he would disapprove of it in the context of abortion. You have to be very precise in these questions so that they are not mixed up between abortion and access to abortion.

      MR. KIYONAGA: I perceive this case to be about abortion, Your Honor.

      THE COURT: Well, it's not. And I have said that several times. And you are incorrect. And if you -- my orders have been very specific. I have indicated to you and to the jury what this case is about. It is not about abortion itself, whether there are views morally or otherwise. That's not what they are deciding. They are deciding access. In other words, can people be prevented, impeded, threatened, or whatever from getting access to reproductive health which can include abortion, and the clinics can give it. That's what the statute is about, not whether he thinks abortion is good or bad.

      MR. KIYONAGA: Your Honor, that is certainly what the indictment says.

      THE COURT: And that's what the case is about. **Your personal views are not going to carry the day. I think you should sit down at this point.** I think you're creating a far more difficult –

**Mr. KIYONAGA: I would like to make a record with the juror off the stand.**

THE COURT: Then ask another question that is permissible. You just indicated that you think this case is about abortion, which it is not. It's totally contrary to what my orders are. I have made it quite specific. And we are doing this in front of the juror, which is not appropriate either.

**MR. KIYONAGA: I would like to make a record outside the juror's presence, ma'am.**

THE COURT: Can we get to -- so this juror we can make a decision about as opposed to having him subjected to this? Can you ask a question that you are trying to get at in an appropriate manner that follows my court orders of what this case is about and what the statute says? Okay. Go ahead.

MR. KIYONAGA: Ma'am, I am being guided in my choice of questions by what I perceive or foresee that the evidence is going to show in this case.

THE COURT: I have already indicated what -- if you are doing hypotheticals, that doesn't work. What I have told you about is the framework and what they have been told. That is the framework within which you ask your questions. And I have indicated what is not coming into the case. All right. So at this point you work with what is in the case, which is access to reproductive care. So ask your question in an appropriate way. I will give you one more try. And then if that doesn't work, I think you will either have somebody else ask questions or make a decision.

MR. KIYONAGA: Your Honor, I honestly can't remember my last question and answer. I am simply trying to establish from this man whether or –

**THE COURT: I'm not interested what you want to establish.** What I want you to do is to figure out -- because then you are telegraphing to him what you are looking for. Ask the question appropriately keeping in mind the framework that I have set out as to what it is that you want to ask in terms of getting his views. Okay?

MR. KIYONAGA: You disapprove of people opposed to abortion, yes or no?

A PROSPECTIVE JUROR: No.

MR. KIYONAGA: You do not disapprove of people that oppose abortion?

A PROSPECTIVE JUROR: I have family members that also disapprove of abortion. I consider them family still. Yeah, I don't know –

MR. KIYONAGA: Do you consider them morally or intellectually –

THE COURT: You are not going to have him decide whether his family is moral or not, so you are going to have to ask it differently.

MR. KIYONAGA: You consider them to be wrong, correct?

A PROSPECTIVE JUROR: Yes.

MR. KIYONAGA: And when you consider somebody to be wrong, that colors your assessment, your evaluation of their actions, correct?

THE COURT: Sir, that's very broad. You are talking about the family members in terms of what interactions or whatever else. He's indicated it has not made a difference within his familial relationships, so I suggest you put it in a different context. And this is your last try.

MR. KIYONAGA: You've indicated that you regard the family members opposed to abortion to be wrong on that issue, correct?

A PROSPECTIVE JUROR: On that issue, yes.

MR. KIYONAGA: Your conclusion that they are wrong on that issue colors your assessment of any actions that they take pertinent to that issue, correct?

**MR. CRABB: The Court has explained over and over that issue [abortion] is not part of this trial.**

**THE COURT: It's not part of the trial.** And also, whether or not -- how that works within his family, it's very broad in terms of does it affect his family. He's indicated already it doesn't. So that's not going to work the way you have worded it.

MR. KIYONAGA: Beyond your family, people opposed to abortion whom you regard as wrong in that context, wrong for having –

THE COURT: He has answered a couple of times. You have asked him several times, and he's answered that. If there's something else you want to get into; otherwise, I think we have gone as far as we can go in terms of you are not presenting the case accurately, and therefore, his answers are not going to be accurate in terms of what this case is about. **I realize you have your personal opinion, but the personal opinion seems to be informing your question, and it's not appropriate because it's not what the case is about.**

MR. KIYONAGA: It's not a matter of personal opinion. It's a matter of what the discovery indicates the evidence is going to be, Your Honor.

THE COURT: Sir, have you read my orders that have indicated -- we have gone as far -- if I could ask you to sit down, maybe somebody else would like to pick up on this question of what it is that he's trying to say or we will leave the record as it is.

MR. CANNON: No questions.

Tr. Aug. 10, 2023, AM Session, pp 87-92 (emphasis added)

B. <u>**Mistreatment of Defendant's Supporter in the Gallery.**</u>

The Court confirmed its bias by sharply chastising, without benefit of context or detail, a Roman Catholic nun in the gallery, reported by one of the prosecutors to have prayed and crossed herself during proceedings.

MR. PATEL: Your Honor, it was brought to our attention that there's a member of the clergy in the gallery who was observing court. During Ms. Smith's testimony, she had repeatedly been making the sign of the cross. It was also brought to our attention that when Ms. Smith walked

out of the courtroom during the break, that same clergy member then started reciting the Hail Mary in her presence.

THE COURT: **What is the matter with you?** You are entitled to come and listen. You are not entitled to interfere with a witness. You are here as observers, nothing more. If you continue to interfere with witnesses -- this is the second incident that we have had with the spectators over there. If you continue to do this, I would expect, frankly, that -- I don't know, which clergy is it? Is it one of the nuns or a priest?

MR. PATEL: One of the nuns, Judge.

THE COURT: Okay. I would think as a nun that you would honor and reflect that this is a judicial proceeding, that there are certain things that need to be done, and whether you disagree with this person's testimony, that is not your role to judge her, which is what you are doing. Don't do that. Do not interfere with the witnesses.

MR. KIYONAGA: Your Honor, if I could object to the Court's instruction.

THE COURT: My instruction is she cannot do the sign of the cross as they are going out or saying the rosary that's clearly directed at the witness.

MR. KIYONAGA: I would just submit that everybody is entitled to pray and --

THE COURT: No. Sir, I have indicated you do not do it ostentatiously. If they want to do the rosary in their lap, that's fine. Clearly she's doing the sign of the cross directed at the witness. That's not appropriate. She can do the rosary without holding it up and doing it in front of the witness.

Tr. Aug. 21, 20232, AM, pp 84-85 (emphasis added).

C. __Interruption of Defendant's Testimony__.

While under cross examination, Defendant responded to the prosecutor's

leading question as to whether abortions are legal in this District, by answering

(correctly) that partial birth abortions are not legal.  Unprompted, the Court

interrupted the questioning to state (incorrectly) that all abortions are legal in this

District and proceeded to deride Defendant as a supposed "legal expert" simply for

answering honestly a direct question from the government – irremediably

communicating to the jury that Defendant should not be believed.  Finally, the Court

terminated the line of questioning instructing the jury to "ignore this'" i.e.,

Defendant's testimony

> **Q [by Government] You know that abortions are legal in the District of Columbia?**
>
> **A I know that some abortions are, but partial birth abortion and abortion that a fetus survives outside the womb --**
>
> **Q Sir --**
>
> **THE COURT: Sir, as a practical matter, that's not correct. There are no statutes in the District of Columbia that say anything about limitations on abortion.**
>
> **THE WITNESS: There's federal laws, Your Honor.**
>
> **THE COURT: You are going to be the legal expert here? I suggest that you not get into that.**
>
> **MR. KIYONAGA: He's simply answering the question, Your Honor.**
>
> THE COURT: He's answering the question as if -- excuse me, sir. He's answering the question as if he's a legal expert. He's not a legal expert. He cannot instruct the jury as to what the law is. Proceed.
>
> BY MR. PATEL:

Q You understand that abortions are legal in the District of Columbia, yes or no?

A Some abortions.

Q Yes or no, abortion care is --

THE COURT: Okay. So your answer -- excuse me, sir. So your answer is that some abortions are allowed, but some are not. Is that what you are saying?

THE WITNESS: Yes. Partial birth abortions are banned in the United States in every state because it is a federal law.

MR. PATEL: Your Honor --

THE COURT: He's decided to basically -- **I would suggest that you ignore this. He is not here as a legal expert in terms of what the law is,** so I will tell you what the law is when we come to the instructions. All right? At this point, whatever his beliefs are, he's not a lawyer, and he's not the legal expert. I would suggest, Mr. Patel, that you move on.

Tr. Aug. 22, 2023, PM, pp 107-09 (emphasis added).

### D. <u>Disparagement of Counsel.</u>

Before the jury, The Court communicated similar disdain toward undersigned – and, by extension, toward Defendant (on more occasions than undersigned can, at present, recount – but the following bear recounting here).

"MR. KIYONAGA: Objection, Your Honor.

THE COURT: **Can you stop?** You are objecting to something that is in the texts, and he can go through the texts. It is something that is probative. Your objection is overruled in terms of he can either agree that that was his response or not agree with it.

MR. KIYONAGA: Your Honor, he's already testified he doesn't remember. He's simply reading what's being put in front of him.

THE COURT: And, Mr. Kiyonaga, he can show him documents that would appear to indicate a communication around this topic that may or may not refresh his recollection. All right? He can find this out. Proceed with your question.

MR. PATEL: Thank you.

Tr. Aug. 22, 2023, PM, pp 118-19.

***

A [by Defendant]. I saw her standing in front of the door in the hallway.

Q [by Government]. Not letting patients into the clinic; right?

MR. KIYONAGA: Speculation, Your Honor.

MR. DUNN: Your Honor, I object under Rule 403. This is, again, cumulative. We're going over everything here two or three times.

THE COURT: No, he's allowed to go through a certain amount of these things in terms of each one of them beforehand, in terms of -- there have been different events. I've overruled both of your objections. And I would say that although you certainly are allowed to object, **I would also point out that I know what the tactic is.**

MR. KIYONAGA: **Your Honor, I'm not indulging in tactics. I'm trying to keep this fair.**

THE COURT: And I am as well, in terms of making sure that everybody gets to give -- ask their questions and get the answers, and at this point, this is appropriate cross-examination. At the point it crosses the line, I will make sure that it is stopped. All right?

Tr., Aug. 23, 2023, AM, pp 36-37 (emphasis added).

## E. **Allowance of Government Confusion of the Jury.**

The Court overruled undersigned's objection to cross examination of Defendant suggesting that the jury could convict Defendant even if he had not actually committed a crime.

**Q [by Government]. Oh, okay. So you think it's okay to do everything up until -- you can walk up to the line and then walk away and not get charged? That's what your testimony is?**

**A. Can you clarify your question.**

**Q. You walked right up to the line to commit a crime and then you walked away and you think you can escape culpability?**

**MR. KIYONAGA: Argumentative, Your Honor.**

**A. No, I did not do that.**

**THE COURT: No, I think he's clarifying; although I would -- in terms of what line you're talking about.**

BY MR. PATEL:

Q. You agreed to participate in every act of the clinic blockade except for blocking the doors; right? A. No.

Q. And you think that's enough for you to not risk arrest; right?

A. I think I'm misunderstanding you or you're misunderstanding me.

Q. Okay.

A. Can you please repeat -- or rephrase the question.

Q. You participated in everything that was planned on this day except for blocking the doors; right?

A. No.

Q. Well, you showed -- you traveled from Pennsylvania to D.C.; right?

A. Yes.

Q. You went to the hummus-and-chips meeting; right?

A. Yes.

Q. You talked about what was going to happen the next day; right?

A. Not at that meeting with --

Q. Well, you certainly --

A. Lauren told me --

THE COURT: Let him finish the answer. You can't both talk at the same time.

A. I knew where to meet up the next morning --

BY MR. PATEL: Q. Okay.

A. -- because of the event that Lauren was planning.

Q. Right. And all the things that you text messaged each

other about; right? A. Yes.

Q. How the event keeps growing bigger and bigger?

A. Yes.

Q. The number of participants?

A. Yes.

Q. Coming from all over the country?

A. Yes. The vast majority of them were either outside of the -- on the sidewalk or inside in the hallway or other where [sic] in the medical complex. Q. Willing to risk arrest?

A. Some of them, yes.

Q. And for blocking the doors?

A. Some of them, but the vast majority were not ever planning on blocking the doors or -- or blocking the doors. However, they were inside the office of the medical complex, which could be considered trespassing if you don't leave once you are asked.

**Q. Because you're a legal scholar, aren't you?**

A. I'm not, no.

MR. KIYONAGA: I didn't hear that question.

THE COURT: Sustained. Objection.

Tr. Aug. 23, 2023, AM, pp 85-87.

## F. Disparagement of Defendant's Testimony to the Jury.

Beyond allowing the jury to surmise that proof of the crime was not actually necessary, the Court affirmatively cast doubt on Defendant's testimony before the jury. Responding to an objection by undersigned, the Court *sua sponte* opted to impugn (without support in the record) the testimony Defendant had already given.

> "THE COURT: "I would also point out that all of [Geraghty's] answers when asked in different ways **are not all necessarily consistent.** So this isn't like he [the prosecutor]'s harping on the same thing getting the same answers."

Tr. Aug. 23, 2023, AM, p. 72 (emphasis added).

Further, the Court proceeded affirmatively to deride to the jury, Defendant's testimony.

> "Q [by Government]. You didn't know how much her and her husband had agonized over the decision that they had to make about that would-be child that they wanted to have; right?
>
> A. Again, I object to your categorization of a human being as a would-be child.
>
> Q. You remember her testifying about --
>
> A. But I did not know her medical circumstances, no.
>
> THE COURT: I'm sorry. You're interrupting each other here.

BY MR. PATEL:

Q. Do you remember what she testified about what she learned from her doctor about her fetus?

A. Yes.

Q. That it wasn't going to survive birth? Do you remember that?

A. That it may not -- that they may not have survived birth. But I also know people who have been given that diagnosis and told that they're not going to survive past birth and then not pass two weeks. And one of my best friends, who has been in this courtroom --

MR. PATEL: Your Honor --

THE COURT: That's --

A. was given that instruction and now she's 30.

THE COURT: Mr. Geraghty -- Mr. Geraghty -- Mr. Geraghty, you're adding a lot of additional information that's not responsive. I realize that you would like to make your points, but in the courtroom, you get a question, you get an answer. And you don't get to add additional things that you think the jury should know that have not been asked by the lawyers. All right? **So ignore his last outburst in terms of providing information about his alleged friend**. It's not part of the evidence.

MR. PATEL: May I continue, Your Honor?

THE COURT: Yes, let's proceed.

BY MR. PATEL:

Q. Mr. Geraghty, you did know that she collapsed; right?

A. I saw her fall to the floor.

Q. You didn't know why she collapsed, did you?

A. No.

Q. She appeared to be in medical distress? You knew that; right?

A. Yes.

Q. But you didn't know the cause, did you?

A. I assumed it was because of Cesare Santangelo's abortion. I know that he's caused many women to collapse and even die in his botched abortions. So I was very concerned about her.

Q. Sir, the question was --

THE COURT: Mr. Geraghty, you're adding a lot of extra information here. Take a pause. Listen to what the question is and answer that.

THE WITNESS: Yes, ma'am.

Tr. Aug. 23, 2023, AM, pp 93-94 (emphasis added).

Concerned, apparently, with the steadfast consistency of Defendant's answers on cross, the Court took the final precaution of telling the jury – again – that his testimony was unreliable.

> "THE COURT: You're not answering the question. **You're adding what you would like to have the jury know. Okay? That's not evidence, and they should ignore it. You don't know whether any of this information he's providing is accurate or not. Okay? And it's not part of the case. So don't add it.** You're just creating problems for yourself.

*Id.*

## CONCLUSION

Having resolutely endeavored to keep counsel from selecting an impartial jury by precluding adequate exploration of the venire's capacity for impartiality regarding the seminal issue of the case - abortion - the Court consistently and unambiguously communicated to the jury its disdain for Defendant and his counsel

(and even, outside the jury's presence, Defendant's supporter).  When the

Government suggested to the jurors that they should move "the line," the Court's

comportment told them that they could do just that.

Whereupon, the jury convicted with insufficient evidence.[1]

Respectfully Submitted,
HERB GERAGHTY
By Counsel

_____/s/_____
John C. Kiyonaga

120 N. St. Asaph Street
Alexandria, Virginia 22314
Telephone: (703) 739-0009
Facsimile: (703) 836-4285
Email: john@johnckiyonagaa.com

Counsel for the Defendant

Certificate of Electronic Service

I hereby certify that on May 14, 2024, I electronically filed the foregoing
with the Clerk of Court using the CM/ECF System, with consequent service on all
parties.

_____/s/_____
John C. Kiyonaga

---

[1] Defendant is amenable to a continuance of his sentencing in view of this motion.